736 March 12, 2025 No. 211

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. B., aka M. N. B.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

M. B.,
aka M. N. B.,
*Appellant.*

Washington County Circuit Court
22JU05222; A181836

Michele C. Rini, Judge.

Argued and submitted February 3, 2025.

Christa Obold Eshleman argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Vacated in part and remanded for written findings under ORS 419C.478(1); otherwise affirmed.

**HELLMAN, J.**

Youth appeals a dispositional judgment committing him to the Oregon Youth Authority (OYA) for placement in a youth correctional facility. In a combined argument, youth argues both that the juvenile court abused its discretion when it committed him to OYA custody because that placement was not in his best interests and that its written findings did not comply with ORS 419C.478(1). As explained below, we conclude that the juvenile court did not abuse its discretion when it concluded that placement in a youth correctional facility was in youth's best interests. However, we accept the state's concession that the juvenile court erred because its written best-interests findings did not satisfy ORS 419C.478(1). Accordingly, we vacate in part and remand for written findings under ORS 419C.478(1), and we otherwise affirm.

A full recitation of the facts is not necessary to understand the narrow issues that we address on appeal. Youth was found within the jurisdiction of the court for conduct which, if committed by an adult, would constitute first-degree sexual abuse, ORS 163.427. After the state alleged that youth had violated a condition of his release, the juvenile court ordered youth's detention under ORS 419C.145(1).[1] The court also imposed several "special conditions" of release. Among those conditions, youth was prohibited from contacting the victims, dating, or "access[ing] the internet unless supervised by parents or authorized adults."

At the dispositional hearing, the juvenile court heard the parties' arguments and youth addressed the court. Youth stated that he wanted to stay at Harkin's House so that he could "become close to [his] family," that he has learned skills such as "think[ing] about [his] actions and the consequences of what's been happening," and that the placement would "help [him] do better in the community."

After stating that it had reviewed youth's "history and disposition report," "the old orders," "the old violations," and youth's "assessments," the juvenile court found a "concerning pattern" of youth's "lack of accountability" and "lack

___

[1] ORS 419C.145(1) provides, in relevant part, that "[a] youth may be held or placed in detention before adjudication on the merits" when certain "circumstances exist[]."

of ownership," including "victim blaming." The court further found that youth had used the internet to contact young women.

> "[THE COURT]:    Now, at that point, I am going to note that we've had placements at DEL, we've had Harkin's House. There are uncharged law violations, uncharged victims. It's been staffed with Alternative Care. We've had a mental health and risk assessment which puts him at a higher risk category than normal. We've had violations of conditional release. There's a real concern about his lack of remorse and understanding. And, again, those are—go real high towards risk factors for re-offending without a very high level of supervision."[2]

As a consequence, the juvenile court ordered youth committed to OYA custody for placement in a youth correctional facility. The court explained, "you earn your way into parole to a residential or parole to home. Okay? It's all about you doing the treatment you need to do." This appeal followed.

        *Best interests.* In his first assignment of error, youth urges us to reverse the juvenile court's decision because, in his view, the record was insufficient for the juvenile court to find that commitment to an OYA correctional facility was in his best interests. DHS responds that "the juvenile court permissibly chose to place youth in OYA's legal custody" because "the record showed that youth was at a high risk of reoffending, was struggling to abide by the law and conditions of release, and failed to understand the gravity of his conduct or take accountability for it."

> "We review the juvenile court's dispositional decision regarding placement of a delinquent youth for abuse of discretion. We will reverse a discretionary ruling only if it falls outside the range of legally permissible options, keeping in mind that there is often more than one legally permissible choice when discretion is at play."

*State v. T. J. L.*, 335 Or App 477, 483, 558 P3d 855 (2024), *adh'd to as modified on recons*, 337 Or App 600, ___ P3d ___ (2025) (citations omitted). "[A] trial court may abuse its discretion if its decision is based on * * * predicate factual

---

[2] We observe that, like in *State v. E. S.*, 333 Or App 350, 352 n 1, 552 P3d 754 (2024), "[n]either party has explained the 'DEL' abbreviation.'"

determinations that lack sufficient evidentiary support." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 117, 376 P3d 960 (2016).

As relevant here, the Supreme Court has explained that a juvenile court

> "is charged with making [a dispositional] determination in the best interest and welfare of the youth. The court is also authorized to commit a youth to OYA custody, and, in specific circumstances, to detain a youth in a jail-like detention setting for specified periods of time. The statutes give the court significant latitude to determine what kind of supervision the youth should be placed in, based on the youth's conduct, and to fashion appropriate conditions during a placement."

*State v. B. Y.*, 371 Or 364, 376-77, 537 P3d 517 (2023) (internal quotation marks and citations omitted). Under ORS 419C.411, a court is required to consider several factors "in determining the disposition of [a] case." Those factors include "[w]hether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premeditated or willful" and the "adjudicated youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders." ORS 419C.411(3)(b), (e). *See also T. J. L.*, 337 Or App at 603 ("Logically, the factors that drive the best-interest determination must be some subset of the factors that drive the disposition generally, as there is a single disposition. *** [H]owever, *** not all of the ORS 419C.411 factors may be relevant to the best-interest determination and *** [a] court should rely only on those that are.").

We have reviewed the record and conclude that it contains sufficient evidence for the juvenile court to determine that commitment to an OYA correctional facility was in youth's best interests. Here, youth admitted to conduct which, if committed by an adult, would constitute first-degree sexual abuse, ORS 163.427. At the dispositional hearing, the juvenile court stated that it had reviewed "the history and disposition report," "the old orders," and "the old violations." The record contains evidence that, despite making improvements since moving into the structured

environment of Harkin's House, youth continued to exhibit problematic behaviors that were, as the juvenile court found, part of a "concerning pattern * * * [of] lack of accountability" and "lack of ownership" and demonstrated that youth was "still pushing the rules" because youth "[doesn't] take accountability." The juvenile court noted "a real concern about [youth's] lack of remorse and understanding. And, again, those * * * go real high towards risk factors for re-offending without a very high level of supervision." As a consequence, the juvenile court determined that, "given the overall big picture," it would commit youth to a correctional facility.

In light of the foregoing, we conclude that the record contained sufficient evidence to allow the juvenile court to determine that OYA custody for placement in a youth correctional faculty was in youth's best interests. *See T. J. L.*, 335 Or App at 487 ("Youth may have a different view of what is in his best interests, but the court did not abuse its discretion in ruling as it did."). Accordingly, the juvenile court did not abuse its discretion.

*Written findings.* In his second assignment of error, youth argues that the juvenile court's written findings are insufficient under ORS 419C.478(1) because they do not describe why placement with OYA was in his best interests. That statute provides, in relevant part:

> "The court may, in addition to probation or any other dispositional order, place an adjudicated youth who is at least 12 years of age in the legal custody of the Oregon Youth Authority for care, placement and supervision * * * In any order issued under this section, the court shall include written findings describing why it is in the best interests of the adjudicated youth to be placed with the youth authority or the department."

ORS 419C.478(1). We have explained that "the written findings required by ORS 419C.478(1) are necessary even when evidence supports the juvenile court's disposition and that failure to make the required written findings is legal error." *State v. E. S.*, 333 Or App 350, 351, 552 P3d 754 (2024) (internal quotation marks omitted). "Regardless of community safety or other practical considerations leading to the

youth's commitment, such as a probation violation, the mandate explicitly requires the findings to describe *why* it is in the *youth's* 'best interests' to be committed to OYA." *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023) (emphasis in original).

The state concedes that the "written findings were insufficient under ORS 419C.478(1)" and we accept the state's concession. Here, the juvenile court's written findings list its concerns with youth's behavior in the community, instead of describing why placement in an OYA correctional facility was in youth's best interests, as ORS 419C.478(1) requires. *See E. S.*, 333 Or App at 353-54 (explaining that the juvenile court's written findings "appear[ed] to catalogue reasons that youth has proved difficult to maintain in the community—listing services that youth has received and issues that youth has continued to have—rather than describing why it is in *youth's best interests* to be placed with OYA" (emphasis in original)). In addition, we observe that the juvenile court's written findings did not address the negative consequences that placement in an OYA correctional facility would impose on youth. Although ORS 419C.411(3) does not explicitly require a juvenile court to consider the potential harm from such a placement, a juvenile court's written findings under ORS 419C.478(1) must demonstrate that it "engaged in a careful evaluation" and that it "[took] time to consider the positive *and negative* impacts a decision may have on the adjudicated youth." *D. B. O.*, 325 Or App at 750-51 (emphasis added). Placement in a correctional setting necessarily results in "negative impacts" to youth, even if the record ultimately demonstrates that the placement is in youth's best interests. Because we conclude that the juvenile court's written findings did not comply with ORS 419C.478(1), we remand for the juvenile court to make the required findings.

Vacated in part and remanded for written findings under ORS 419C.478(1); otherwise affirmed.