78 June 4, 2025 No. 491

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of N. K. H.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

N. K. H.,
*Appellant.*

Washington County Circuit Court
20JU04998, 22JU01139; A182027 (Control), A182028

Thomas A. Goldman, Judge pro tempore.

Submitted March 18, 2025.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this consolidated juvenile delinquency case, youth appeals a judgment placing him in the legal custody of the Oregon Youth Authority (OYA) after he admitted to violating his probation. In four assignments of error, youth argues that the juvenile court "erred both by ruling that OYA commitment was in [youth's] best interest under ORS 419C.478(1) and by authorizing [youth's] incarceration under ORS 419C.495." As explained below, we conclude that the juvenile court did not abuse its discretion when it determined that committing youth to OYA custody for placement in a youth correctional facility was in his best interests. Accordingly, we affirm.

In November 2020, youth admitted to conduct which, if committed by an adult, would constitute second-degree robbery, ORS 164.405. In March 2021, the juvenile court found youth within its jurisdiction and placed youth on probation. In January 2022, youth admitted that he violated his probation conditions by consuming marijuana. In March 2022, the state alleged that youth had committed conduct which, if committed by an adult, would constitute first-degree theft, ORS 164.055. The court found youth within its jurisdiction on that charge and placed youth on probation. In October 2022, the state alleged that youth violated several probation conditions and that youth had admitted to his counselor that he had consumed alcohol and marijuana.

In May 2023, the state again alleged that youth violated his probation conditions. At the contested hearing, youth admitted that he had tested positive for marijuana. The state asked the court to place youth in OYA custody so that he could "receive drug and alcohol treatment" and youth asked the juvenile court to terminate youth's probation. After finding that the case presented "a very complicated picture," the court determined that commitment to OYA legal custody for placement in a youth correctional facility was in youth's best interests. This appeal followed.

As a preliminary matter, we understand all of youth's assignments of error to present the same legal question by challenging the juvenile court's determination that commitment to OYA custody for placement in a youth correctional

facility was in youth's best interests. Accordingly, for the purposes of our analysis, we address youth's assignments of error collectively.[1]

> "We review the juvenile court's dispositional decision regarding placement of a delinquent youth for abuse of discretion. We will reverse a discretionary ruling only if it falls outside the range of legally permissible options, keeping in mind that there is often more than one legally permissible choice when discretion is at play."

*State v. T. J. L.*, 335 Or App 477, 483, 558 P3d 855 (2024), *adh'd to as modified on recons*, 337 Or App 600, 564 P3d 503 (2025) (citations omitted). "[A] trial court may abuse its discretion if its decision is based on * * * predicate factual determinations that lack sufficient evidentiary support." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 117, 376 P3d 960 (2016).

A juvenile court is "authorized to commit a youth to OYA custody, and, in specific circumstances, to detain a youth in a jail-like detention setting for specified periods of time. ORS 419C.478 (commitment to OYA custody); ORS 419C.453 (authorizing detention)." *State v. B. Y.*, 371 Or 364, 376-77, 537 P3d 517 (2023). Thus, a juvenile court has "significant latitude to determine what kind of supervision the youth should be placed in, based on the youth's conduct, and to fashion appropriate conditions during a placement." *Id.* at 377. As relevant here, "in addition to probation or any other dispositional order," a juvenile court may "place an adjudicated youth * * * in the legal custody of the Oregon Youth Authority for care, placement and supervision." ORS 419C.478(1). In doing so, a juvenile court is required to "include written findings describing why it is in the best interests of the adjudicated youth to be placed with [OYA]." *Id.* The "best interests assessment is a child-focused consideration and must be child-centered." *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023) (internal quotation marks omitted).

Further, in determining the disposition of a case, a juvenile court is required to consider several factors, such

---

[1] We do not understand youth to challenge's the juvenile court's written findings under ORS 419C.478(1) (requiring a juvenile court to "include written findings describing why it is in the best interests of the adjudicated youth to be placed with the youth authority" when it "place[s] an adjudicated youth * * * in the legal custody of the Oregon Youth Authority").

as "[w]hether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premeditated or willful" and the youth's "juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders." ORS 419C.411(3). With respect to the relationship between the ORS 419C.411 factors and the ORS 419C.478 best-interest determination, we have explained that, "[l]ogically, the factors that drive the best-interest determination must be some subset of the factors that drive the disposition generally, as there is a single disposition." *State v. T. J. L.*, 337 Or App 600, 603, 564 P3d 503 (2025). "[H]owever, * * * not all of the ORS 419C.411 factors may be relevant to the best-interest determination and * * * [a] court should rely only on those that are." *Id.*

We have reviewed the record and conclude that the juvenile court did not abuse its discretion when it determined that committing youth to OYA custody for placement in a youth correctional facility was in his best interests. Notably, "the legislature imposed the findings requirement to ensure that the juvenile court takes time to consider the positive and negative impacts a decision may have on the adjudicated youth." *D. B. O.*, 325 Or App at 750. In other words, by imposing the findings requirement, the legislature created a process that requires juvenile courts to carefully and thoroughly consider any factor favoring or counseling against the commitment to OYA custody. That process is designed to protect a child's interests and to safeguard against conclusory approaches to a decision that has the power to fundamentally alter a childhood. The record demonstrates that the juvenile court did so here:

> "[THE COURT]:   And I'm not denying that there isn't support at home. But, it is not support that you have been willing to engage in fully. And it leads to what keeps coming back in front of me. There have been the stays in DEL. There's been the electronic monitoring. Issues at DEL, including the fighting.
>
> "The possession of weapons as noted on at least one of your probation violations—the kitchen knife, I think, back in January of '22. Based on the fact that it is in your best interest to receive drug and alcohol treatment so we can really get this under control.

"And it's not being able to be properly done on an out-patient basis. The mental health treatment that you need to fix the criminality that's going on so that you can be a strong, productive member of society."[2]

Arguing for a different result, youth contends that "[t]he juvenile court's reasoning also reflects an undue reliance on [youth's] past law and probation violations rather than the required focus on [youth's] needs at the time of the hearing." We disagree with youth's argument. In "determining the disposition of a case," ORS 419C.411(3) requires a juvenile court to consider a youth's past conduct. *See, e.g.*, ORS 419C.411(3)(e) (requiring a juvenile court to consider a youth's "juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders"). In addition, a juvenile court "may consider" other factors such as a youth's "mental, emotional and physical health and the results of the mental health or substance abuse treatment." ORS 419C.411(4)(f); *see also T. J. L.*, 337 Or App at 603 ("[N]ot all of the ORS 419C.411 factors may be relevant to the best-interest determination and *** the court should rely only on those that are."). Here, the court's findings indicate that it appropriately considered youth's past conduct with respect to those factors as context for its best-interest determination. Specifically, the court found:

"Based on the continued violations of conditions of release, the violations of probation, that *** continued use over the period of these cases, your history of whereabouts being unknown, the fact that you've been on the run, the resources that have been expended, Harkins House, inpatient treatment at the Harmony Academy, the intensive outpatient, the mentoring services, the mental health services, it is clear that where you thrive and succeed is with structure and support.

" * * * * *

"[I]t is appropriate for you to be in a secure environment where these things can occur. What I can tell you is that these programs are based on how well you respond and react.

---

[2] We observe that, like in *State v. E. S.*, 333 Or App 350, 352 n 1, 552 P3d 754 (2024), "[n]either party has explained the 'DEL' abbreviation. It may refer to the Donald E. Long juvenile detention facility in Portland, although we have found nothing in the trial court record to confirm whether that is correct."

"If you work hard, it is not a long-term program. If you throw up barriers, if you refuse to engage, if you fight the system, that's when it drags out. The people are there to give you the tools to succeed to get you back home."

Because the record supports the juvenile court's findings, we conclude that it did not abuse its discretion.

Affirmed.