334　June 18, 2025　No. 546

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. B., aka M. N. B.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

M. B.,
aka M. N. B.,
*Appellant.*

Washington County Circuit Court
22JU05222; A181836

Michele C. Rini, Judge.

On youth's petition for reconsideration filed April 9, 2025, respondent's petition for reconsideration filed April 9, 2025, and youth's response filed April 16, 2025. Opinion filed March 12, 2025. 338 Or App 736, 566 P3d 713 (2025).

Christa Obold Eshleman and Youth, Rights & Justice, for petition and response.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, for petition.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

HELLMAN, J.

State's petition for reconsideration allowed; youth's petition for reconsideration denied; former opinion withdrawn; vacated in part and remanded for written findings under ORS 419C.478(1); otherwise affirmed.

**HELLMAN, J.**

Youth and the state have petitioned for reconsideration of our opinion in this case, *State v. M. B.*, 338 Or App 736, 566 P3d 713 (2025). Youth argues that the juvenile court used "an incorrect legal standard" in making its best interest determination under ORS 419C.478(1) when it committed him to Oregon Youth Authority (OYA) legal custody and urges us to "vacate and remand the commitment judgment for the juvenile court to *** determine the question of [youth's] best interests under ORS 419C.478(1) under the correct legal standard." Specifically, youth repeats the argument from his briefing that "there was no evidence that would have allowed the juvenile court to determine that commitment was in [youth's] best interests." We reject that argument because, as we have explained, the record did contain such evidence. Moreover, we "disfavor[]" "[c]laims addressing legal issues already argued in the parties' briefs" and those that we have already addressed. ORAP 6.25(1)(e).

> "The rule stating that repeating unsuccessful arguments on reconsideration is 'disfavored' is based not on jurisprudential stubbornness, but on considerations of fairness and economy. Parties already have a fair opportunity to make arguments in the ordinary course of briefing and oral argument. To permit multiple bites at the proverbial apple is unfair to opposing parties, who are obliged to respond, and wastes scarce judicial resources that already have been expended in evaluating the same arguments."

*Nakashima v. Board of Education*, 206 Or App 568, 571, 138 P3d 854 (2006), *aff'd*, 344 Or 497, 185 P3d 429 (2008). We deny youth's petition for reconsideration.

However, we allow the state's petition for reconsideration. Here, the state conceded that the juvenile court's written findings did not comply with ORS 419C.478(1) and we accepted that concession. However, in so doing, we "observe[d] that the juvenile court's written findings did not address the negative consequences that placement in an OYA correctional facility would impose on youth." In its petition for reconsideration, the state argues that ORS 419C.478(1) "does not separately require the juvenile court to make written findings as to whether placement in a youth correctional

facility is in a youth's best interests" and that our opinion "appear[ed] to apply the written findings requirement provided in ORS 419C.478(1) to the juvenile court's recommendation under ORS 419C.495(1)."[1] The state's point is well taken. As a consequence, we must modify our opinion to reflect that, under ORS 419C.478(1), a juvenile court's written findings must "describ[e] why it is in the best interests of the adjudicated youth to be placed" in *OYA custody*, not why it is in the youth's best interests to be placed in a particular OYA facility. For the sake of clarity, rather than making those modifications by interlineation, we withdraw our former opinion and restate the opinion as modified here.

Youth appeals a dispositional judgment committing him to OYA legal custody for placement in a youth correctional facility. In a combined argument, youth argues both that the juvenile court abused its discretion when it committed him to OYA custody because that placement was not in his best interests and that its written findings did not comply with ORS 419C.478(1). As explained below, we conclude that the juvenile court did not abuse its discretion when it determined that commitment to OYA custody for placement in a youth correctional facility was in youth's best interests. However, we accept the state's concession that the juvenile court erred because its written best-interests findings did not satisfy ORS 419C.478(1). Accordingly, we vacate in part and remand for written findings under ORS 419C.478(1), and we otherwise affirm.

A full recitation of the facts is not necessary to understand the narrow issues that we address on appeal. Youth was found within the jurisdiction of the court for conduct which, if committed by an adult, would constitute first-degree sexual abuse, ORS 163.427. After the state alleged that youth had violated a condition of his release, the juvenile court ordered youth's detention under ORS 419C.145(1).[2]

---

[1] ORS 419C.495(1) provides:

"An adjudicated youth placed in the legal custody of the Oregon Youth Authority may be placed in a youth correction facility or in a private institution operated as a facility for adjudicated youths requiring secure custody only when the juvenile court having jurisdiction so recommends."

[2] ORS 419C.145(1) provides, in relevant part, that "[a] youth may be held or placed in detention before adjudication on the merits" when certain "circumstances exist[]."

The court also imposed several "special conditions" of release. Among those conditions, youth was prohibited from contacting the victims, dating, or "access[ing] the internet unless supervised by parents or authorized adults."

At the dispositional hearing, the juvenile court heard the parties' arguments and youth addressed the court. Youth stated that he wanted to stay at Harkin's House so that he could "become close to [his] family," that he has learned skills such as "think[ing] about [his] actions and the consequences of what's been happening," and that the placement would "help [him] do better in the community."

After stating that it had reviewed youth's "history and disposition report," "the old orders," "the old violations," and youth's "assessments," the juvenile court found a "concerning pattern" of youth's "lack of accountability" and "lack of ownership," including "victim blaming." The court further found that youth had used the internet to contact young women.

> "[THE COURT]:  Now, at that point, I am going to note that we've had placements at DEL, we've had Harkin's House. There are uncharged law violations, uncharged victims. It's been staffed with Alternative Care. We've had a mental health and risk assessment which puts him at a higher risk category than normal. We've had violations of conditional release. There's a real concern about his lack of remorse and understanding. And, again, those are—go real high towards risk factors for re-offending without a very high level of supervision."[3]

As a consequence, the juvenile court ordered youth committed to OYA custody for placement in a youth correctional facility. The court explained, "you earn your way into parole to a residential or parole to home. Okay? It's all about you doing the treatment you need to do." This appeal followed.

*Best interests.* In his first assignment of error, youth urges us to reverse the juvenile court's decision because, in his view, the record was insufficient for the juvenile court

---

[3] We observe that, like in *State v. E. S.*, 333 Or App 350, 352 n 1, 552 P3d 754 (2024), "[n]either party has explained the 'DEL' abbreviation. It may refer to the Donald E. Long juvenile detention facility in Portland, although we have found nothing in the trial court record to confirm whether that is correct."

to find that commitment to OYA custody for placement in a correctional facility was in his best interests. DHS responds that "the juvenile court permissibly chose to place youth in OYA's legal custody" because "the record showed that youth was at a high risk of reoffending, was struggling to abide by the law and conditions of release, and failed to understand the gravity of his conduct or take accountability for it."

> "We review the juvenile court's dispositional decision regarding placement of a delinquent youth for abuse of discretion. We will reverse a discretionary ruling only if it falls outside the range of legally permissible options, keeping in mind that there is often more than one legally permissible choice when discretion is at play."

*State v. T. J. L.*, 335 Or App 477, 483, 558 P3d 855 (2024), *adh'd to as modified on recons*, 337 Or App 600, 564 P3d 503 (2025) (citations omitted). "[A] trial court may abuse its discretion if its decision is based on * * * predicate factual determinations that lack sufficient evidentiary support." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 117, 376 P3d 960 (2016).

As relevant here, the Supreme Court has explained that a juvenile court

> "is charged with making [a dispositional] determination in the best interest and welfare of the youth. The court is also authorized to commit a youth to OYA custody, and, in specific circumstances, to detain a youth in a jail-like detention setting for specified periods of time. The statutes give the court significant latitude to determine what kind of supervision the youth should be placed in, based on the youth's conduct, and to fashion appropriate conditions during a placement."

*State v. B. Y.*, 371 Or 364, 376-77, 537 P3d 517 (2023) (internal quotation marks and citations omitted). Under ORS 419C.411, a court is required to consider several factors "in determining the disposition of [a] case." Those factors include "[w]hether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premeditated or willful" and the "adjudicated youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders." ORS 419C.411(3)(b), (e). *See*

*also T. J. L.*, 337 Or App at 603 ("Logically, the factors that drive the best-interest determination must be some subset of the factors that drive the disposition generally, as there is a single disposition. *** [H]owever, *** not all of the ORS 419C.411 factors may be relevant to the best-interest determination and *** [a] court should rely only on those that are.").

      We have reviewed the record and conclude that it contains sufficient evidence for the juvenile court to determine that commitment to OYA custody for placement in a correctional facility was in youth's best interests. Here, youth admitted to conduct which, if committed by an adult, would constitute first-degree sexual abuse, ORS 163.427. At the dispositional hearing, the juvenile court stated that it had reviewed "the history and disposition report," "the old orders," and "the old violations." The record contains evidence that, despite making improvements since moving into the structured environment of Harkin's House, youth continued to exhibit problematic behaviors that were, as the juvenile court found, part of a "concerning pattern *** [of] lack of accountability" and "lack of ownership" and demonstrated that youth was "still pushing the rules" because youth "[doesn't] take accountability." The juvenile court noted "a real concern about [youth's] lack of remorse and understanding. And, again, those *** go real high towards risk factors for re-offending without a very high level of supervision." As a consequence, the juvenile court determined that, "given the overall big picture," it would commit youth to a correctional facility.

      In light of the foregoing, we conclude that the record contained sufficient evidence to allow the juvenile court to determine that commitment to OYA custody for placement in a youth correctional facility was in youth's best interests. *See T. J. L.*, 335 Or App at 487 ("Youth may have a different view of what is in his best interests, but the court did not abuse its discretion in ruling as it did."). Accordingly, the juvenile court did not abuse its discretion.

      *Written findings.* In his second assignment of error, youth argues that the juvenile court's written findings are insufficient under ORS 419C.478(1) because they do not

describe why placement with OYA was in his best interests. That statute provides, in relevant part:

> "The court may, in addition to probation or any other dispositional order, place an adjudicated youth who is at least 12 years of age in the legal custody of the Oregon Youth Authority for care, placement and supervision * * *. In any order issued under this section, the court shall include written findings describing why it is in the best interests of the adjudicated youth to be placed with the youth authority or the department."

ORS 419C.478(1). We have explained that "the written findings required by ORS 419C.478(1) are necessary even when evidence supports the juvenile court's disposition and that failure to make the required written findings is legal error." *State v. E. S.*, 333 Or App 350, 351, 552 P3d 754 (2024) (internal quotation marks omitted). "Regardless of community safety or other practical considerations leading to the youth's commitment, such as a probation violation, the mandate explicitly requires the findings to describe *why* it is in the *youth's* 'best interests' to be committed to OYA." *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023) (emphasis in original).

The state concedes that the "written findings were insufficient under ORS 419C.478(1)" and we accept the state's concession. Here, the juvenile court's written findings list its concerns with youth's behavior in the community, instead of describing why placement in OYA custody was in youth's best interests, as ORS 419C.478(1) requires. *See E. S.*, 333 Or App at 353-54 (explaining that the juvenile court's written findings "appear[ed] to catalogue reasons that youth has proved difficult to maintain in the community—listing services that youth has received and issues that youth has continued to have—rather than describing why it is in *youth's best interests* to be placed with OYA" (emphasis in original)). Although ORS 419C.411(3) does not explicitly require a juvenile court to consider the potential harm from that placement, a juvenile court's written findings under ORS 419C.478(1) must demonstrate that it "engaged in a careful evaluation" and that it "[took] time to consider the positive *and negative* impacts a decision may have on the adjudicated youth." *D. B. O.*, 325 Or App at 750-51 (emphasis added).

Because we conclude that the juvenile court's written findings did not comply with ORS 419C.478(1), we remand for the juvenile court to make the required findings.

State's petition for reconsideration allowed; youth's petition for reconsideration denied; former opinion withdrawn; vacated in part and remanded for written findings under ORS 419C.478(1); otherwise affirmed.