No. 1091             December 17, 2025             751

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of Z. L. G.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

Z. L. G.,
*Appellant.*

Washington County Circuit Court
23JU06268; A184872

Thomas A. Goldman, Judge pro tempore.

Argued and submitted November 10, 2025.

Ginger Fitch argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Julia Taylor, Assistant Attorney General, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

Jacquot, J., dissenting.

**KAMINS, J.**

Youth appeals a judgment committing her to the legal custody of the Oregon Youth Authority (OYA) and recommending placement in a youth correctional facility (YCF). In three assignments of error, youth challenges the sufficiency of the juvenile court's written findings and that commitment to OYA was in her best interests. We affirm.

Youth admitted to facts that constituted first-degree assault if committed by an adult and was found within the jurisdiction of the juvenile court. Prior to disposition, youth was placed on conditional release with a parent with several conditions. Those ordered conditions included 24/7 supervision for one week, electronic monitoring, not to possess or consume any alcohol or drugs, and submit to random urinalysis (UAs) as requested by the juvenile counselor. While on supervision, youth still had unexplained absences from school, did not communicate her whereabouts consistently to the county juvenile department, and falsified several UAs. Youth was sent to, and successfully completed, a four-week inpatient substance use treatment. Just prior to the disposition hearing, youth was engaging in intensive outpatient treatment.

The court ruled that OYA commitment was in youth's best interests. Specifically, in its written findings, the court found it was in youth's best interest to be placed in a YCF because she was "in need of significant mental health and drug and alcohol treatment" and could not maintain sobriety long term in the community.[1]

---

[1] The juvenile court's written findings stated:

"The youth presents before the court for an exceptionally violent action in the community while she was under the influence. While pending disposition, the youth has spent time in Donald E. Long Detention and Yamhill facilities, attended Madrona in patient treatment, and been on strict electronic monitoring. The youth, while in the community, falsified UAs with the juvenile department. At the outset of this case, the youth was not regularly attending school. It is in the best interests of this youth to be placed in a YCF as she [is] in need of significant mental health and drug and alcohol treatment. The youth has shown that while in the community she is unable to be safely and securely monitored by her family. She struggled even with oppressive conditions of release which put a significant hardship on her own family. While in the custody of a YCF, the youth will have access to the structure and supervision that she needs to successfully complete treatment. Though the

We review the sufficiency of the court's written findings under 419C.478(1) for legal error. *State v. T. J. L.*, 335 Or App 477, 482, 558 P3d 855 (2024), *adh'd to as modified on recons*, 337 Or App 600, 564 P3d 503 (2025) (citing *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023)). "We review the juvenile court's dispositional decision regarding placement of a delinquent youth for abuse of discretion. *Id.* at 483 (citing *State v. B. Y.*, 371 Or 364, 378, 537 P3d 517 (2023)); *State v. M. B.*, 341 Or App 334, 339, 575 P3d 219, *rev den*, 374 Or 437 (2025) (same). We review the substantive finding of whether OYA custody is in youth's best interests for abuse of discretion. *See State v. N. K. H.*, 341 Or App 78, 79-80, 572 P3d 349, *rev den*, 374 Or 437 (2025) (applying standard).[2]

Youth argues that the juvenile court erred by failing to consider certain requirements—including a presumption of parental custody and the long-term harm that results from OYA commitment. Youth also argues that any commitment that removes a child from their home, such as this one, requires evidence that remaining in the custody of a parent is contrary to the child's welfare. Youth also contends that the substantive determination that OYA custody was in youth's best interest relied on inferred facts not in the record and ignored youth's progress. We have reviewed the record and conclude that the juvenile court did not err. While a juvenile court is required to take time to consider the positive and negative impacts of commitment, the *manner* in which it does so is within a juvenile court's discretion, so long as it makes the required findings. *See N. K. H.*, 341 Or App at 80 ("We will reverse a discretionary ruling only if it falls outside the range of legally permissible options,

youth has access to necessary services in the community, she has not shown herself to be able to maintain sobriety long term in the community."

[2] Youth argues that we should apply a legal error standard of review, which would require overruling *State v. T. J. L.*, 335 Or App 477, 482, 558 P3d 855 (2024), *adh'd to as modified on recons*, 337 Or App 600, 564 P3d 503 (2025). As we recently stated in *State v. C. J. W.*, ___ Or App ___, ___, ___ P3d ___ (2025) (slip op at 5), "[w]e are not persuaded that *T. J. L.* is wrong, let alone 'plainly wrong,'" and we decline to overrule it. *See State v. Civil*, 283 Or App 395, 415, 388 P3d 1185 (2017) ("Mere disagreement, however, is not—and cannot be—a sufficient justification for overruling precedent. Rather, the prudential principles that undergird *stare decisis*, as well as practical institutional considerations, require more. Much more.").

keeping in mind that there is often more than one legally permissible choice when discretion is at play." (Internal quotation marks omitted.)). The juvenile court's findings here were sufficiently unambiguous and youth-centered because they demonstrated a link between youth's specific needs (mental health and substance use treatment) and explained why youth could not meet those needs adequately in the community. *Cf. State v. E. S.*, 333 Or App 350, 354, 552 P3d 754 (2024) ("Findings that are ambiguous as to whether they are directed to the youth's best interests—versus being directed to what is in the best interests of the community, what is in the best interests of other individuals, what is administratively convenient, what is a justifiable punishment for a probation violation, or the like—will not survive appellate review ***.").[3]

Affirmed.

**JACQUOT, J.,** dissenting.

I write separately out of concern that the juvenile court's findings do not adequately meet the legislative mandate to determine that commitment to the Oregon Youth Authority (OYA) is in the best interest of the youth. As interpreted by our case law, that determination includes weighing the anticipated benefits to be gained against the potential costs to the youth's well-being. The juvenile court did not explicitly consider any costs of the chosen disposition and detrimental impacts to youth's family, support system, or ability to function independently as a community member. Short-term or long-term. The majority acknowledges the juvenile court must do so, but it does not identify anything in the juvenile court's ruling showing that the juvenile court

---

[3] The dissent asserts that ORS 419C.478(1) requires the court to expressly consider the negative aspects of both a YCF placement as well as the removal of a youth from their family. ___Or App at ___ (Jacquot, J., dissenting) (citing *M. B.*, 341 Or App at 341 and *D. B. O.*, 325 Or App at 748-49). We disagree. There is no such requirement in the text of the juvenile statutes; rather the statutes dictate that we must evaluate whether such placement is in youth's best interests. *See M. B.*, 341 Or App at 341 (noting that the juvenile disposition statute, ORS 419C.411(3), "does not explicitly require a juvenile court to consider the potential harm from" a YCF placement); *State v. C. J. W.*, ___ Or App ___, ___, ___ P3d ___ (2025) (slip op at 6) (rejecting argument "that under the juvenile statutes there is an additional presumption that placement with parents is in youth's best interests").

did so. Compliance with the requirement of adequate written findings is reviewed for legal error, not abuse of discretion.

ORS 419C.001 provides that the Oregon juvenile justice system was "founded on the principles of personal responsibility, accountability and reformation," not punishment. The focus of Oregon's juvenile justice is rehabilitation. *See, e.g.*, *State v. B. Y.*, 371 Or 364, 383, 537 P3d 517 (2023) (reasoning that juvenile courts should base their decisions on "the specific circumstances and rehabilitative needs of the youth in each case"). The Supreme Court has also noted that "[u]nlike many states that recently have shifted their focus from juvenile rehabilitation to juvenile accountability and punishment, Oregon has remained faithful to its original emphasis on the rehabilitation of delinquent youth." *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 568, 857 P2d 842 (1993). As youth argues in her brief, we have also rejected punishment as a permissible goal in a delinquency disposition. *State v. T. J. L.*, 335 Or App 477, 485, 558 P3d 855 (2024).

Though the juvenile court cited legitimate concerns about youth's willingness and ability to follow through with the needed substance abuse and mental health services in the community, it did not appear to consider the potential harm to youth caused by removing her from the community that she will return to and her ability to function once she returns. Given the information available to the juvenile court in the form of the juvenile department recommendations, I would remand for the court to reconsider the consequences, positive and negative, of removing youth from the custody of her parents and her support system, and to render new written findings. In light of the structure of the system the legislature created and the necessity to go through that deliberative process before determining the appropriate disposition, which is admittedly discretionary, I would remand for the court to determine again whether commitment to the state training school is appropriate and whether closed custody is necessary to achieve rehabilitation rather than as proper punishment. Community safety and responsibility to the victim can only be considered after that calculus is completed, in writing.

ORS 419C.478(1) requires the juvenile court to determine if placing a youth in the legal custody of OYA is in the *youth's* best interests. In *State v. D. B. O.*, 325 Or App 746, 748, 529 P3d 1004 (2023), we held that "[r]*egardless of community safety* or other practical considerations leading to the youth's commitment, \*\*\* the mandate explicitly requires the findings to describe *why* it is in the *youth's* 'best interests' to be committed to OYA." (Initial emphasis added). Similarly, in *State v. E. S.*, 333 Or App 350, 354, 552 P3d 754 (2024), we emphasized that the question of a youth's best interest is separate from other considerations. We vacated that decision because the juvenile court failed to satisfy the required focus on the youth's best interests:

> "Under ORS 419C.478(1) and our case law construing it, the juvenile court must direct its written findings to the specific issue of why it is in a youth's best interests to be placed with OYA. Findings that are ambiguous as to whether they are directed to the youth's best interests—versus being directed to what is in the best interests of the community, what is in the best interests of other individuals, what is administratively convenient, what is a justifiable punishment for a probation violation, or the like—will not survive appellate review and will result in remand for additional findings."

*Id.* In *D. B. O.* and its progeny, we interpreted ORS 419C.478 to require a standalone determination of the youth's best interests, separate from other dispositional statutes, such as the community-protection considerations found in ORS 419C.411(3)(d). When a juvenile court orders a youth into OYA custody while recommending—and thereby authorizing—a youth correction facility placement under ORS 419C.495(1), it must necessarily find that the commitment to OYA for that particular type of placement "is most likely to lead to a positive outcome" for the youth. *D. B. O.*, 325 Or App at 750; *see also* ORS 419C.478(2) (providing that, if a court orders a youth into OYA custody, "the court may specify the type of care, supervision or services to be provided by the youth authority").

By requiring written findings "describing why" OYA commitment is in a youth's best interest, the legislature intended that the juvenile court would provide

documentation that it engaged in the necessary, youth-centered inquiry. *See D. B. O.*, 325 Or App at 750 ("By requiring written findings concerning the child's best interests, the legislature expressed its intent that the juvenile court carefully evaluate the decision and separately provide a written explanation."); *see also B. Y.*, 371 Or at 376-77 (recognizing that the juvenile court "has authority to direct the youth to remain in the legal custody of the youth's parents" and "to determine whether OYA custody is in the youth's best interests"). In *D. B. O.*, the youth in that case assigned error to the written findings and argued that those findings were inadequate under ORS 419C.478(1) to explain why commitment of the youth to OYA was in his best interests. *D. B. O.*, 325 Or App at 748-49. In that case, the juvenile court wrote that the youth "cannot be maintained in the community." *Id.* at 749. We held that "the court's written finding is too ambiguous to satisfy the requirement for 'an explanation of why it would be in the best interests of youth to be committed to a custodial setting rather than the remain with family or in the community.'" *Id.* at 750 (citing *State v. S. D. M.*, 318 Or App 418, 421, 506 P3d 1190 (2022)).

We also held in *S. D. M.* that the legislature "has required that juvenile courts also consider and then separately provide a written explanation of why it is in a youth's best interest to be in the custody of OYA or [Oregon Department of Human Services (ODHS)] and not with youth's family or in the community." 318 Or App at 421; *see also State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 183, 205 P3d 36 (2009) (illustrating we have long held that the court is required to make written findings to "ensure that the decision is one that is most likely to lead to a positive outcome for the child"). The written findings requirement mandates the juvenile court identify the youth's needs, ways to meet those needs, and the harms and benefits of the youth's options. *State v. N. K. H.*, 341 Or App 78, 81, 572 P3d 349 (2025) ("[B]y imposing the findings requirement, the legislature created a process that requires juvenile courts to *carefully and thoroughly consider any factor favoring or counseling against the commitment to OYA custody.* That process is designed to protect a child's interests and to safeguard against conclusory approaches to a decision that has

the power to fundamentally alter a childhood." (Emphasis added.)).

In this case, the juvenile court included the "community" and "victim's" best interests in the written findings about the youth's best interests. Rather than divide those into two separate inquiries, the juvenile court combined the two under both ORS 419C.411 and ORS 419C.478. The majority opinion does not hold the juvenile court to the requirement to show its work and defaults to the more deferential abuse of discretion standard applicable to the decision to commit to closed custody and dispositional consequences.

When deciding whether to remove a youth from their parents' custody and place them in state custody, the juvenile court must take the time to consider the positive and negative impacts that the removal will have on youth. *D. B. O.*, 325 Or App at 750 (citing *S. D. M.*, 318 Or App at 421).[1]

In this case, the juvenile court explicitly considered how placing youth in a correction facility would *benefit* youth:

> "While in the custody of [the youth correction facility], the [y]outh will have access to the structure and supervision that she needs to successfully complete treatment. Though the [y]outh has access to necessary services in the community, she has not shown herself to be able to maintain sobriety long term in the community."

The juvenile court did not, however, consider how that placement may *harm* her as required under ORS 419C.478(1). *See also M. B.*, 341 Or App 334, 341, 575 P3d 219 (2025) (requiring consideration of the "negative impacts a decision may have on the adjudicated youth" (emphasis omitted)). Removing a child from their family is a weighty decision that has significant consequences. There is no indication in this record that the juvenile court considered the consequences to youth herself.

---

[1] The juvenile court did not consider the potential negative consequences of confinement on traumatized individuals. As youth argues in her brief, the November 2023 incident that is the subject of this appeal was an isolated report of violence and it directly followed youth's claims of being sexually assaulted the day before by the son of the person youth confronted.

The juvenile court did not fully grapple with the detrimental effects of incarceration for youths as required under the "best interests" analysis of ORS 419C.478. Therefore, I respectfully dissent for the court to consider and document if the commitment to OYA is in the best interest of the youth anew, and because that deliberative process must occur before consideration of closed custody or appropriate disposition, for reconsideration of those decisions in light of the new best interests finding. I dissent.